IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
        v.                     )      No.  06 CR 756
                               )
BRIAN KEITH HUGHES,            )
                               )
                Defendant.     )

<u>MEMORANDUM OPINION AND ORDER</u>

In its prosecution of Brian Hughes ("Hughes") for crimes related to two alleged[1] fraudulent bankruptcy petition schemes, the government wishes to introduce evidence of certain uncharged conduct of Hughes[2] that took place both before and concurrently with the presently charged conduct.  That uncharged conduct comprises two mortgage fraud schemes.[3]

Hughes actively opposes the admission of evidence of the second scheme, dubbed the "mortgage loan application scheme." Hughes and two others are said to have used stolen identities to defraud mortgage lenders out of the funds disbursed for home

_____

        [1]  All future references to purported criminal activity will omit the words "alleged" or "asserted" or the like.  Because this Court of course neither makes nor implies any findings in that respect, those qualifying adjectives are to be understood but are being omitted solely in the interest of simplicity.

        [2]  That other conduct is uncharged in this federal prosecution, although Hughes is being prosecuted in the state court system for at least one of the acts.

        [3]  It is also the government's intention to introduce evidence as to an asserted rescue fraud scheme, but Hughes has not challenged that proposal.

loans.  Hughes' cohorts in the mortgage loan application scheme
played no role in the conduct as to which Hughes is charged.

Fed. R. Evid. ("Rule") 404(b) precludes the admission of
evidence of uncharged conduct to show that the defendant acted in
conformity with some certain character trait--most often a
propensity to commit crime.  Even though Rule 404(b) is a rule of
exclusion, not of inclusion, it opens the door of admissibility
by stating that evidence of uncharged conduct may come in if it
is offered for some relevant purpose other than to prove
character (for instance, to prove motive or intent).  To be
admitted, however, such evidence must still comply with the rest
of the rules regarding admissibility.

To that end a four-pronged test has been fashioned in the
seminal opinion in Huddleston v. United States, 485 U.S. 681
(1988) to determine the admissibility of uncharged conduct
evidence.  And Huddleston remains alive and well after nearly two
decades:  Thus, earlier this year United States v. Mallett, 496
F.3d 798, 801 (7th Cir. 2007) reiterated the standards in these
terms: (1) the evidence must be directed toward establishing a
matter in issue other than the defendant's propensity to commit
the charged offense; (2) the evidence must show that the
uncharged conduct is similar enough and close enough in time to
be relevant to the matter in issue; (3) the evidence must be
sufficient to support a jury finding that the defendant committed

the similar act; and (4) the danger of unfair prejudice must not
outweigh the evidence's probative value.

That first element embodies Rule 404(b). In this
prosecution the government claims the evidence of Hughes'
mortgage loan application scheme illuminates his knowledge,
fraudulent intent and absence of mistake in the charged
bankruptcy frauds. In the indictment's four counts, the
government accuses Hughes of violating 18 U.S.C. §§157(1) and
152(3). Each section sets out a specific intent crime, and "when
a defendant is charged with a specific intent crime, the
government may present other acts evidence to prove intent"
(United States v. Whiting, 471 F.3d 792, 801 (7th Cir. 2006)).
Even so, the government still cannot offer such evidence to
create an impermissible propensity inference. Here Hughes' past
fraudulent dealing can be viewed as probative of whether he
mustered the requisite level of intent to commit the charged
bankruptcy fraud offenses--but at the same time it cannot be
gainsaid that it carries with it an implication of propensity as
well.

Relevancy forms the crux of the second inquiry--whether the
uncharged conduct is sufficiently comparable to the charged
conduct to be of proper use to a finder of fact. Similarity
between the charged and uncharged conduct need not be rigidly
scrutinized where the uncharged conduct is offered to prove

intent:  It is unnecessary for the uncharged acts to be identical to the charged conduct--instead they need only be similar enough to support an inference of intent (United States v. Long, 86 F.3d 81, 84 (7th Cir. 1996)).  Similarity, a concept that evades precise definition, calls for a case-by-case analysis--to be sufficiently alike the acts must share more than just "some common characteristics" but rather "the common characteristics must relate to the purpose for which the evidence is offered" (id.).  Seventh Circuit precedent has both "loosely interpreted and loosely applied" the term "similarity" in its analysis (United States v. Montani, 204 F.3d 761, 768 (7th Cir. 2000)).  There is of course an element of irony here:  the greater the similarity (pointing to admissibility), the greater the potential for the forbidden inference of propensity (pointing to inadmissibility).

In this instance mortgage fraud and bankruptcy fraud are sufficiently alike for the evidence of the uncharged mortgage fraud to be viewed as relevant to the determination of Hughes' intent to commit bankruptcy fraud.  In the alleged mortgage application scheme the mortgage was secured with false identities and never repaid.  In the charged bankruptcy fraud the mortgage was properly secured, but then bankruptcy petitions were fraudulently filed (in one case by using a false identity) to stop the mortgage lender from receiving payment or foreclosing on

the mortgage. While not identical in operation, the schemes had a like effect. And temporally speaking, the uncharged conduct preceded the charged conduct by 1-1/2 years, a proximity sufficiently close to support admissibility (United States v. Lloyd, 71 F.3d 1256, 1264 (7th Cir. 1995)).

As for the third requirement--that the evidence must be such that a jury could reasonably conclude that the uncharged acts occurred and that defendant was the actor--it is intended to ensure that the proffered evidence of uncharged conduct stands on more than mere unfounded speculation and conjecture. In light of the already-described risks implicit in the admission of such evidence, it is surprising that the courts have not developed a gatekeeping function akin to that prescribed for opinion testimony under Rule 702--yet the caselaw teaches that the trial court need not predetermine that defendant committed the uncharged acts, even by a preponderance of the evidence, before permitting presentation to the jury (see, e.g., United States v. Manso-Portes, 867 F.2d 422, 425 (7th Cir. 1989)). As stated earlier, Hughes has been charged with the mortgage application fraud scheme in state court. Although Hughes is of course entitled to the presumption of innocence there (just as he is here), the information submitted by the government is enough to overcome the low hurdle posed by the third element of the Huddleston formulation.

That brings the analysis to the fourth element, which calls
for the balancing process prescribed by Rule 403:  a
determination that the danger of unfair prejudice caused by the
uncharged conduct evidence will not outweigh the probative value
of the evidence.  Unlike relevancy, the required element of
probativeness is evaluated on a sliding scale under which the
greater the probativeness, the more courts are inclined to
indulge some risk of undue prejudice (see, e.g., United States v.
Torres, 977 F.2d 321, 328 (7th Cir. 1992)).

This Court is of course well aware of the conventional
wisdom that properly crafted jury instructions can guard against
jurors being tempted to reach for the forbidden fruit of
propensity when considering the evidence of uncharged conduct
(see, e.g., United States v. James, 487 F.3d 518, 524 (7th Cir.
2007)).  That approach is essential because we do not bug jury
rooms to learn how jurors really reach their decisions, and to
keep the jury system from breaking down we judges must
necessarily indulge the sometimes fictitious propositions
embodied in that conventional wisdom or in the similarly
convenient (though sometimes problematic) holdings that
acknowledged errors are harmless, even though we have no
assurance that such is the case.

But here this Court sees no difficulty in deciding on which
side of the Rule 403 balance the disputed evidence falls.

Consider the prospect that a juror, having been confronted with the evidence (for example) of Hughes' eight successive bankruptcy filings charged in Paragraphs 6 through 13 of Count One of the indictment, still harbors a doubt as to the existence of the required criminal intent on Hughes' part--but that juror then has that doubt dispelled by the admitted evidence as to the uncharged conduct at issue here. Can there be any serious question that there is a major risk (if not a near certainty) that the uncharged conduct, although marginally probative as to intent, has really tipped the scales because of propensity considerations?

In short, the nature of the charged conduct in this case, as well as the nature of the disputed and uncharged conduct, calls for a Rule 403 determination--which parallels the fourth element in the Huddleston canon--that the danger of unfair prejudice substantially outweighs the incremental probative value of the uncharged conduct. Hughes' motion to exclude such disputed evidence is granted.

Milton I. Shadur
Senior United States District Judge

Date: November 9, 2007